Reese, J.
delivered the opinion of the court.
This is an attachment bill. It sets forth that defendant is indebted to the complainants for á note made by him to them for $586, which was due, and upon which suit, before the filing of said bill, had been brought, and was pending in the Circuit Court for Wilson county; and one other for $293, then not due, to wit: 30th January, 1846, but due January 1847; that said Cummings was the owner of some twenty or thirty negroes, and that he was about to remove his property beyond the limits of this State, or otherwise so conceal the same, that it will be placed beyond the reach of his creditors, and by that means complainants’ debts will be wholly lost; and the bill prays that he be made a defendant; that a copy and subpoena issue, and that an attachment issue against said property, and that the same, or so much thereof as may be sufficient, be sold to pay said debts, and for general relief.
Upon the return of the subpoena and attachment the defendant moved the court to discharge the attachment on the face of the bill, as having improvidently and irregularly issued, and to dismiss the bill; and upon argument, the Chancellor so decreed.
The complainants have prosecuted their appeal in error to this court. The question presented upon the record, involves a construction of the act of 1843, ch. 29. The main purpose *233 of that act was, no doubt, to furnish a iemedy, for evils naturally enough resulting from the abolishment of the writs of capias ad respondendum, and capias ad satisfaciendum, and with them, of appearance and prison bonds, and which evils were alluded to in the case of the Union Bank vs. Newman, 4 Hum., decided in 1843.
The first section provides, “that in all cases, where a debtor, or a defendant, in any suit or judgment, is removing or about to remove himself or his property beyond the limits of this State; or shall be absconding, or concealing himself, or his property or effects, it shall be lawful,” &c., “to obtain an attachment,” &c., “against,” &c., “in the same manner as such process may be obtained against absconding or non-resident debtors, under the different statutes now in force in this State.”
The question arising upon this’ section is, where must the attachment be returned? To the court where the suit is pending? or elsewhere? Why elsewhere? The suit already brought, by personal service, is intended to investigate, and to ascertain the question of indebtedness or liability. The object of the attachment, is to secure, contingently, a satisfaction for the indebtedness or liability, when adjhdged or decreed. It would seem right, therefore, if it turned upon this section, alone, that the attachment should be returned, where the suit is pending— be that at law or in equity — for, as has been said, the object of the attachment, in such case, is merely ancillary and subservient.
Again: the object and the terms of the provision are very comprehensive, and embrace “all cases where a debtor or defendant,” in any suit “is removing.” An action for breach of covenant at law, as well as a bill for the settlement of a partnership account is embraced by the terms, defendant in any suit. In case of such “removing,” &c., pendente lite, shall a bill in equity, by attachment, spring out of the action of covenant, or an attachment at law be issued to await the settlement of the account in Chancery? Or, should not the ancillary process be issued by, and be returned to the court where the principal cause is depending, and be attached to, or incorporated with such cause?
*234 The following sections of the statute under consideration fortify the ground we have here taken. The 2d section provides for a replevy bond, and its conditions, namely, that he shall pay the debt, interest and costs, or the value of the property attached, at his election, in the event he shall be cast in the suit. The 3d section expressly provides, that this bond shall constitute a part of the record in the case, and if the defendant shall be in the suit, it shall be lawful for the court to enter up its judgment or decree, (as the case may be,) against the defendant and surety for the amount of their respective liabilities.
In fine, this statute, taken altogether, provides, indeed, new grounds for the issuance of an attachment, and authorizes such issuance under new circumstances, but it makes no change, we think, in the.jurisdiction, as it existed, between courts at law and equity.
And, either of these courts, when the case arises, may annex to the principal suit, this ancilliary attachment. The 8th section does not change the application of the principle we have been discussing.
For the above reasons, we affirm the decree of the Chancellor.